

DAVID E. RICE
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| GEARY B. KATZ, | ) | Case No. 14-10356-DER |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| JUDY A. ROBBINS, | ) | |
| United States Trustee, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Pro. No. 14-00837-DER |
| | ) | |
| GEARY B. KATZ, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| MICHAEL G. WOLFF, | ) | |
| Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Pro. No. 14-00838-DER |
| | ) | |
| GEARY B. KATZ, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

These adversary proceedings were consolidated because the court determined that there existed common questions of law or fact. A four-day trial on the merits of the complaints objecting to discharge filed by the United States Trustee and the Chapter 7 Trustee was held September 19 through 22, 2016. The plaintiffs ask this court to deny the debtor's discharge under, among other things, § 727(a)(2)(B) of title 11 of the United States Code (the "Bankruptcy Code").[1] At the trial, the debtor, Geary B. Katz (the "Debtor"), and a number of other witnesses were called to testify, and various exhibits were introduced into evidence. Following the trial, the court held this matter under advisement and requested post-trial memoranda from the parties. The time for filing post-trial memoranda has expired, the court has ruled on the various post-trial motions filed by the parties, and the court is now prepared to rule on this matter.

## Jurisdiction

The court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Local Rule 402 of the United States District Court for the District of Maryland. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(J). This memorandum opinion constitutes the court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure (made applicable here by Rule 7052 of the Federal Rules of Bankruptcy Procedure).

---

[1] The complaints also assert numerous grounds for denial of discharge under other subsections of § 727(a). As the Fourth Circuit has observed, however, "[a] party objecting to discharge need prove only one of the grounds for nondischargeability under § 727(a) because the provisions of § 727(a) are phrased in the disjunctive. Proof of conduct satisfying any one of the sub-sections is enough to justify a denial of a debtor's request for a discharge." *Farouki v. Emirates Bank Int'l., Ltd.*, 14 F.3d 244, 250 (4th Cir. 1994). After trial, the United Stated Trustee filed a Motion to Amend Complaint to Conform to the Evidence Adduced at Trial to add additional grounds for denial of discharge based upon matters she alleges came to light for the first time in the evidence presented at trial. The court will grant that motion by separate order because such leave is to be freely granted. *Foman v. Davis*, 371 U.S. 178 (1962). Inasmuch as the court has determined that § 727(a)(2)(B) is applicable, however, it need not consider any of the remaining grounds alleged by the plaintiffs.

## Findings of Fact

The Debtor was the chief executive officer and one of the owners of Senate Acceptance Corporation ("SAC").   The primary business of SAC was to enter into insurance premium finance agreements with customers who purchased automobile insurance policies through Senate Insurance Agency, Inc. ("SIA").  The Debtor was also the chief executive officer and one of the owners of SIA.  SAC raised the funds necessary to operate its insurance premium finance business by in large part borrowing money from persons acquainted with the Debtor and the other owners of SAC and SIA.  In 2013, the Maryland Insurance Commissioner prohibited SIA from writing new policies for insurers, and SIA and SAC were unable to meet their obligations as they came due.  As a result, creditors filed an involuntary petition against SAC in this court on December 2, 2013.  Shortly thereafter, on January 8, 2014 (the "Petition Date") creditors of SAC that held guaranties of the Debtor filed the involuntary petition against him in this court.  The case was converted to one under Chapter 11 of the Bankruptcy Code on January 23, 2014, but after a brief period was reconverted to Chapter 7 on April 14, 2014 and Michael G. Wolff (the "Chapter 7 Trustee") was appointed to serve as trustee of the Debtor's bankruptcy estate.

On the Petition Date, the Debtor was the owner of, and the insured person under, a Variable Life Insurance Policy with a face amount of insurance of $3,000,000 issued by AXA Equitable Life Insurance Company ("AXA") and identified as Policy No. 45215473 (the "AXA Policy").  On the Petition Date, the designated beneficiaries of the AXA Policy were Gina B. Katz (the Debtor's then wife) in the amount of $500,000 and Rabbi Mendel Bluming (the Debtor's rabbi) in the amount of $2,500,000.  In his Schedules filed on February 20, 2014, the Debtor listed the AXA Policy as an asset with a value of $535,809.38 (which amount was the then gross cash surrender value of the AXA Policy before deduction of loans taken against such

~ 3 ~

amount), and he claimed the entire $535,809.38 as exempt under § 16-111 of the Insurance Article of the Maryland Code Annotated.  In amended Schedules filed on May 8, 2014, the Debtor indicated that the value of the AXA Policy was $535,809.38 and again claimed the entire amount as exempt under § 16-111.

On May 29, 2014, the Senate Lenders Litigation Trust objected to the Debtor's claim of exemption for the AXA Policy under § 16-111 to the extent that it was not for the benefit of or assigned to the Debtor's spouse, child, or dependent relative.  In a response filed by the Debtor on June 26, 2014 and supported by his affidavit, the Debtor stated that the beneficiaries of the AXA Policy were his daughter Gabrielle Katz and Rabbi Mendel Bluming.  Following a hearing held on November 12, 2014 before the late Judge Paul Mannes (who was then presiding over this case), the court entered an order on November 17, 2014 determining that "the exemption claimed as to the AXA Flexible Premium Variable Life Insurance … is DISALLOWED to the extent the policy is not for the … benefit of or assigned to the Debtor's spouse, child, or dependent relative."  No appeal was taken from that order.

On February 15, 2015, the Debtor filed amended Schedules in which he listed the AXA Policy with a value of $3,000,000.  By an amended Schedule filed on March 10, 2015, the Debtor again claimed the AXA Policy as exempt in the amount of $535,809.38 under § 16-111(a) and under separate provisions in § 8-115 of the Estates and Trusts Article of the Maryland Code Annotated.  On April 6, 2015, the Chapter 7 Trustee and the Senate Lenders Litigation Trust both objected to the renewed claim of exemption of the AXA Policy on the grounds, among others, that the issue had been fully litigated and decided as a matter of res judicata by the order entered by Judge Mannes on November 17, 2014.  The Debtor did not file a response, and this court entered an order on May 4, 2015 that sustained the objections of the

Chapter 7 Trustee and the Senate Litigation Trust, and disallowed the Debtor's March 10, 2015 claim of exemption for the AXA Policy. No appeal was taken from that order.

While these events were taking place, the Debtor was engaged in activities with respect to the AXA Policy outside of the bankruptcy court. On January 13, 2014 (five days after the Petition Date), the Debtor changed the beneficiary designations for the AXA Policy to his daughter Gabrielle Katz in the amount of $500,000 and Rabbi Mendel Bluming in the amount of $2,500,000. On March 27, 2014 (less than three weeks before his case was reconverted to Chapter 7), the Debtor again changed the beneficiary designation for the AXA Policy to his daughter Gabrielle Katz in the amount of $1,500,000 and Rabbi Bluming in the amount of $1,500,000. On September 4, 2014 (after the court had issued notice of a hearing on the objection to exemption of the AXA Policy),[2] the Debtor took a loan in the amount of $10,974.42 against the cash surrender value of the AXA Policy without prior notice to the Chapter 7 Trustee.[3] On December 22, 2014 (after entry of the order sustaining the objection to the exemption of the AXA Policy to the extent the beneficiaries were not the Debtor's spouse, child, or dependent relative, and again without prior notice to the Chapter 7 Trustee), the Debtor changed the beneficiary designations for the AXA Policy to his daughter Gabrielle Katz in the amount of $990,000, his son Gregory Katz in the amount of $990,000, and his son Garrett Katz in the amount of $1,020,000 – thereby entirely eliminating Rabbi Bluming as a beneficiary. All

_____

[2] On July 7, 2014, the court first issued notice of a hearing on the objection to exemptions for July 24, 2014. The hearing was ultimately held on November 12, 2014.

[3] The Chapter 7 Trustee only learned of the $10,974.42 post-petition loan taken by the Debtor from discovery taken by the Chapter 7 Trustee in his separate litigation against AXA. *See Michael G. Wolf, Chapter 7 Trustee v. AXA Equitable Life Ins. Co.*, Adv. Pro. No. 16-00188-DER. The effect of the loan was to reduce the cash surrender value of the AXA Policy.

of these beneficiary designation changes were made by the Debtor without notice to creditors or prior approval of this court.

At trial, the Debtor testified that he believed he was entitled to take the $10,974.42 loan against the cash surrender value on September 4, 2014 because he was advised that the AXA Policy was fully exempt as claimed in his Schedule C filed on February 20, 2014 and amended on May 8, 2014. At that time and until November 17, 2014 (immediately following entry of the order sustaining the objection to exemption of the AXA Policy), the Debtor was represented in his main bankruptcy case by attorneys at the law firm of Selzer Gurvitch Rabin Wertheimer Polott & Obecny, PC, including Patrick J. Kearney. The Debtor also testified that the basis for his belief was advice given to him by Patrick Kearney. According to the Debtor, Patrick Kearney told him that the AXA Policy "was exempt, it was mine." The Debtor's testimony about the exemption of the AXA Policy and his post-petition loan against the cash surrender value is simply not credible.

Patrick Kearney was called as a witness and testified at trial over the Debtor's objection and assertion of the attorney-client privilege. Patrick Kearney's testimony was credible. He is an experienced bankruptcy attorney and long-time practitioner before this court. Based upon his testimony, it is clear that Patrick Kearney never advised the Debtor that it was proper for him to take the $10,974.42 loan against the cash surrender value of the policy or that the AXA Policy was exempt in its entirety. Patrick Kearney did not know about the $10,974.42 loan when it was taken by the Debtor on September 4, 2014, and only learned of its existence on the witness stand during his testimony before this court. Patrick Kearney did not advise or suggest to the Debtor that he could withdraw that amount from the cash surrender value of the AXA Policy. Moreover, Patrick Kearney told the Debtor that his opinion was that there was a question as to

what portion of the AXA Policy would be exempt. According to his testimony, Patrick Kearney never told the Debtor that more than one sixth of the AXA Policy would be exempt – that is, what proved to be the very ruling made by Judge Mannes in his November 17, 2014 order.

## Conclusions of Law

The denial of a debtor's discharge is a serious matter. As many courts have observed, a discharge should not be denied to an honest debtor merely because of oversight, inadvertence, or mistake on the part of the debtor. *Standiferd v. United States Trustee (In re Standiferd)*, 641 F.3d 1209, 1212 (10th Cir. 2011) ("the opportunity for 'a completely unencumbered new beginning' is reserved only for 'the honest but unfortunate debtor.'") (quoting *Grogan v. Garner*, 498 U.S. 279, 286–287 (1991)); *United States Trustee v. Sieber (In re Sieber)*, 489 B.R. 531, 554 (Bankr. D. Md. 2013) ("'A debtor will not be denied discharge if a false statement is due to mere mistake or inadvertence.'") (citing *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1294–95 (10th Cir. 1997)); *see also Friendly Fin. Disc. Corp. v. Jones (In re Jones)*, 490 F.2d 452, 456 (5th Cir. 1974) ("the reasons for denying discharge to a bankrupt must be real and substantial, not merely technical or conjectural.") (citing *In re Pioch*, 235 F.2d 903, 905 (3d Cir. 1956)).

In evaluating an objection to a debtor's discharge, § 727 is construed liberally in favor of debtors and strictly against the objecting party. *Cho v. Park (In re Park)*, 480 B.R. 627, 631–32 (Bankr. D. Md. 2012) (citing *In re Beauchamp*, 236 B.R. 727, 730 (9th Cir. BAP 1999)); *Lafarge North Am., Inc. v. Poffenberger (In re Poffenberger)*, 471 B.R. 807, 815 (Bankr. D. Md. 2012) (citing *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996)). The objecting party carries the burden of showing by a preponderance of the evidence that the debtor is not entitled to a discharge. *Farouki*, 14 F.3d at 249. The burden may shift to the debtor to provide satisfactory, explanatory evidence if the objecting party presents a prima facie case,

but the ultimate burden of proof always rests on the objecting party. *Id*. at 249. *See also Poffenberger*, 471 B.R. at 819 (explaining that the burden shifts to the debtor to come forward with evidence he has not committed the alleged offense once it appears that the statement under oath was false). As previously noted, the provisions of § 727 are phrased in the disjunctive, and thus proof by an objecting party of only one of the grounds in the statute requires the court to deny entry a debtor's discharge. *Farouki*, 14 F.3d at 250.

With these general principles in mind, the court turns to consideration of the application of § 727(a)(2)(B) to the circumstances of this case. The court concludes that the plaintiffs have met their burden and that the Debtor's discharge must be denied.

Section § 727(a) provides in relevant part that the court must grant a discharge to a debtor unless:

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under [the Bankruptcy Code], has transferred, removed, destroyed, mutilated, or concealed … property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2)(B). "To bar a debtor's discharge under section 727(a)(2)(B), the plaintiff must prove each of the following four elements by a preponderance of the evidence: (1) a transfer of property, (2) belonging to the estate, (3) after the date of the filing of the petition, (4) with the intent to hinder, delay, or defraud a creditor or officer of the estate." *Sieber*, 489 B.R. at 545 (citing *First Union Nat'l Bank v. Golob (In re Golob)*, 252 B.R. 69, 78 (Bankr. E.D. Va. 2000)).

The plaintiffs met their initial burden to present a prima facie case on the four elements of their § 727(a)(2)(B) claim with respect to the AXA Policy. The $10,974.42 withdrawal from the cash value of AXA Policy was a transfer of property to the Debtor. The AXA Policy and the

cash surrender value of the policy are property of the Debtor's bankruptcy estate subject only to an exemption claim as to one sixth of the policy and cash surrender value. The transfer occurred after the Petition Date. Lastly, I conclude that the evidence presented was more than sufficient to demonstrate a prima facie case that the transfer was made with the intent to hinder, delay, or defraud a creditor or an officer of the estate – namely, the Chapter 7 Trustee.[4] That being the case, absent some satisfactory explanation the Debtor's discharge should be denied.

Thus, I find that in this instance the burden shifted to the Debtor to provide satisfactory explanatory evidence. He did not do so. The Debtor's explanation for his conduct was that he thought he was entitled to take the loan from the AXA Policy because his attorney Patrick Kearny told him that the AXA Policy "was exempt, it was mine." This explanation is not satisfactory and is not credible. Patrick Kearny did not learn about the loan until he was on the witness stand at trial; thus, he certainly did not advise the Debtor that taking the loan was permitted. Moreover, Patrick Kearney did not give the Debtor the supposed advice that the policy was exempt and his alone as the Debtor would have the court believe. According to Patrick Kearney's credible testimony, he never told the Debtor he was entitled to anything more

---

[4] Direct evidence of the intent of a debtor is unlikely to be found by the party objecting to discharge because a debtor is unlikely to admit acting with fraudulent intent. Therefore, it is well-settled that the court may infer intent to hinder, delay, or defraud from the circumstances under which a transfer was made. *United States Trustee v. Rahmi (In re Rahmi)*, 535 B.R. 655, 661 (Bankr. N.D.W. Va. 2015) (applying under § 727(a)(2)(B)); *Sieber*, 531 B.R. at 545–46 (applying under § 727(a)(2)(A)); *Cho*, 480 B.R. at 637 (applying under § 727(a)(4)); *Poffenberger*, 471 B.R. at 816 (applying under § 727(a)(2)(A)). The court concludes that such an inference is appropriate here. The transfer was knowingly made by the Debtor to himself without prior disclosure or court approval at a time when an objection to his exemption of the AXA Policy was pending and the court had scheduled (but not yet held) a hearing to determine the validity or extent of his exemption claim. The transfer was not disclosed to the Debtor's attorney and was only revealed to the Chapter 7 Trustee in the course of discovery in the Chapter 7 Trustee's later litigation against AXA. These circumstances lead the court to conclude that the Debtor possessed the requisite intent at the time of the transfer.

than one sixth of the AXA Policy; advice that proved to be entirely consistent with the ultimate ruling by Judge Mannes.

Moreover, the circumstances belie the Debtor's explanation. The objection to exemption of the AXA Policy was filed more than three months before the Debtor took the loan against the cash surrender value of the policy. The Debtor filed a response to that objection more than two months before he took the loan – a response that was supported by the Debtor's affidavit. The affidavit makes reference to the then existing beneficiary designations for the AXA Policy. Shortly after his response was filed, the court issued a notice of the hearing on the objection to the Debtor's claim of exemption for the AXA Policy. Despite his recent financial reversals, the Debtor is a sophisticated businessman. At the time the Debtor took the loan from the AXA Policy, he knew that he was doing so at a time when the merits of his claim of exemption had not been resolved by the court. If he did not know (which I do not believe is the case), then he could only have been acting with reckless disregard for the rights of his bankruptcy estate and the Chapter 7 Trustee. Such reckless disregard would not be a satisfactory explanation for his conduct. Accordingly, I conclude that the Debtor has not met his burden to offer a satisfactory explanation in the face of the prima facie case presented by the plaintiffs.[5]

---

[5] On December 12, 2016, this court conducted an evidentiary hearing in the main bankruptcy case on the Chapter 7 Trustee's motion to compel turnover by the Debtor of various sums of money withdrawn by him as loans against the cash surrender value of the AXA Policy and various other AXA policies insuring the lives of his children. After considering the evidence (including the testimony of the Debtor) presented at that hearing, the court overruled the Debtor's objection to the Trustee's motion, determined that each of the three policies in question were property of the bankruptcy estate, and ordered the Debtor to turn over $38,110.35, which sum included $9,145.35 (that is, five sixth) of the $10,974.42 that he withdrew from the cash surrender value of the AXA Policy. *See* Order Compelling Debtor to Turnover Property of the Estate entered on December 14, 2016 [Main Case Docket No. 502] (the "Turnover Order"). No appeal was taken from the Turnover Order. That hearing and ruling occurred after trial in these adversary proceedings and do not directly impact the Debtor's entitlement to a discharge. They were, however, a second opportunity for the Debtor to demonstrate a justification for his actions regarding the AXA Policy – an opportunity that resulted in the court concluding (as it does in this opinion) that the Debtor's withdrawal of cash from the AXA Policy was improper.

In light of the above, the court need not consider the impact or validity of the many changes in beneficiary designations for the AXA Policy made by the Debtor.  As Patrick Kearney testified, the exemption rights of the Debtor are determined based upon the facts and law as they existed on the Petition Date.  It may well be the case that the changes were ineffective; but, that is an issue not now before the court.  The Debtor testified that he was motivated to make those changes by a desire to ensure that the death benefit under the AXA Policy would be enjoyed by his family members.  To the extent that those changes prove to impact adversely the right of the Chapter 7 Trustee to recover the bankruptcy estate's five-sixth interest in the AXA Policy, they might be an independent basis upon which to deny the Debtor's discharge.  This court need not reach that issue, however, since the court has concluded that the Debtor's conduct in taking the loan against the cash surrender value is, standing alone, a basis for denial of his discharge under § 727(a)(2)(B).

## Conclusion

For the above reasons, this court concludes that the plaintiffs have proven by a preponderance of the evidence that the Debtor's discharge should be denied pursuant to § 727(a)(2)(B) of the Bankruptcy Code.  A separate order denying the Debtor's discharge will be entered.


cc:     All Parties in Interest


**-- END OF OPINION --**